## CHARLES G. ROBBINS v. JOHN M. PACKARD.

### Trover. Damages.

The plaintiff deposited certain notes belonging to him with the defendant to be held as security until a piece of land conveyed by the former to a third person, and by him to the defendant, should be relieved of certain mortgagages. The plaintiff took up all the mortgage notes, procured one of the mortgages to be discharged upon the record, and against the other, the mortgage being dead, he tendered to the defendant, together with the mortgage notes, an indemnifying bond, which the plaintiff accepted; *Held*, that this was a sufficient compliance with the condition on which the defendant received the notes, to entitle the plaintiff to have them back, and that the latter, after a demand and refusal, might maintain trover for them against the defendant.

The notes so deposited with the defendant were all but one the notes of one P., the other being that of the defendant himself. P.'s notes had been given to the plaintiff in payment of a piece of land which the latter had conveyed to him by a deed conditioned to be valid upon the payment of these notes. P. quit claimed the land to the defendant, who agreed with him and the plaintiff to pay the notes. Afterwards, the plaintiff deposited the notes in question with the defendant as security as above mentioned, and conveyed the land to him, and subsequently the defendant, with the plaintiff's consent, conveyed it to K; *Held*, that after the plaintiff had so removed the mortgages as to be entitled to have the notes back, the rule of damages in an action of trover for the defendant's refusal to return them, was the full amount due upon them.

In trover for the wrongful detention by the defendant of notes or other *choses in action* against a third person, the rule of damages is the *value* of the notes; but when the action is for the detention of notes executed by the defendant himself, or which he is liable to pay, the rule of damages is the amount due upon them, without regard to their being collectible, or his ability to pay them. PIERPOINT, J.

TROVER for eight promissory notes, seven signed by one Prosser, and one by the defendant, and all payable to the plaintiff. Plea, the general issue, and trial by jury, at the June Term, 1858, —BENNETT, J., presiding.

It appeared on trial that on the 4th of June, 1847, the plaintiff sold to Prosser a piece of land for six hundred dollars, and took therefor the latter's ten notes for sixty dollars each, three of which were subsequently paid, the remaining seven being among those for the conversion of which this action was brought; and

Robbins *v*. Packard.

the plaintiff at the same time gave Prosser a deed of the land, conditioned to be valid if these ten notes were paid, otherwise not. On the 16th of January, 1850, Prosser conveyed by a quit claim deed the same land to the defendant, who agreed with the plaintiff and Prosser to pay the former all of the latter's notes given to the plaintiff for the land, which then remained unpaid.

The plaintiff introduced testimony tending to prove that after the defendant had paid one or more of Prosser's notes, he became uneasy on account of two old mortgages on the land in question, one from Franklin Cady to Elisha Cady, and the other from Elisha Cady to John Hutchinson, which had never been discharged of record, but which in fact, as appeared in evidence, had been paid, and that in consequence of the defendant's anxiety upon this subject, the plaintiff on the 5th of March, 1855, executed and delivered a deed of the land to the defendant, and handed the notes in question to the defendant's wife, who was present with her husband at the time, and told them to hold the deed and the notes until he should get up the mortgages. The plaintiff's testimony also tended to show that in December, 1856, the defendant, by his consent, sold and conveyed the land to one Keyes, after which the plaintiff demanded the notes of the defendant, who refused to deliver them up; that the plaintiff afterwards obtained from Franklin Cady and Elisha Cady a quit claim deed of all their interest in the land in question to the defendant, which he procured to be recorded; and that he also procured from the son of the other mortgagee, John Hutchinson, who was dead, a receipt dated January 24, 1857, in full of all claim under that mortgage; and also that the plaintiff executed a bond in the penal sum of two thousand dollars, to indemnify the defendant from all damage arising from the Hutchinson mortgage, and that he procured all the notes mentioned in both the Hutchinson and Cady mortgages, and tendered both the bond and notes to the defendant, and demanded the notes of Prosser and the defendant, for which this suit was brought; and that the defendant accepted and received the bond, but refused to deliver up the notes.

The defendant introduced testimony tending to prove that the notes in question were delivered by the plaintiff to the defendant's wife, as a gift to her for her separate use, and the defendant's

counsel claimed that they were so given as a remuneration for real or supposed injuries done by him to her character, or with a view to acquire an improper influence over her. The defendant also introduced testimony tending to show an improper intimacy between the plaintiff and the defendant's wife, and a lascivious intent on the plaintiff's part.

The defendant offered to prove by one Hughes, that the plaintiff stated to the defendant that once in the summer of 1856, he saw one Maxham standing in the road for half an hour with his arms around the neck of the defendant's wife, and that Maxham was her paramour. This testimony was objected to by the plaintiff, and rejected by the court, to which the defendant excepted.

It appeared from the testimony that Prosser was a man of small means when he gave the notes in question, having only about three hundred dollars in personal property, and no real estate.

The court charged the jury, among other things not excepted to, that if they found that the notes were given to the wife of the defendant, as his evidence tended to show, then the plaintiff could not recover, and that it was of no importance as it respected the validity of the gift, what the particular motive in making it was; but that if they found that the notes were delivered to the wife simply as her husband's agent, and for the purpose which the plaintiff's evidence tended to show, the refusal of the wife to deliver them to the plaintiff, after he had complied with the condition on which they were left with her, and had demanded them, would be a sufficient conversion on the part of the defendant to render him liable in this action; and that if they found the facts which the plaintiff's testimony tended to prove in regard to the payment of the old mortgages on the land, and the tender of the bond of indemnity by the plaintiff to the defendant, and its acceptance by the latter, then the plaintiff had so far complied with the condition upon which the notes were placed in the hands of the defendant or his wife, as would entitle him to a return of the notes, and in default thereof upon demand, to maintain this action. The jury were further instructed that if they found a verdict for the plaintiff, the damages should be the amount of the notes, including interest. To this charge of the court the defendant excepted.

*Briggs & Nicholson* and *Roberts & Chittenden*, for the defendant.

*J. W. Stewart* and *E. J. Phelps*, for the plaintiff.

PIERPOINT, J. This is an action of trover for eight promissory notes.

The first objection to the ruling of the court below which was urged in the argument, is to the exclusion of the testimony of Stephen Hughes. The defendant offered to show by this witness, that the plaintiff stated to the defendant that in the summer of 1856, he had witnessed some improper intercourse between the defendant's wife and one Maxham. As this transaction is stated in the bill of exceptions to have transpired some eighteen months after the property sought to be recovered for in this suit was put into the hands of the defendant, or his wife, and as it not claimed by the defendant that either he or his wife have any right to retain the property in controversy, except such as is derived from what transpired at the time the property was delivered to them by the plaintiff on the 5th day of March, 1855, it is impossible for us to see what bearing the facts sought to be proved could have upon the defendant's right to retain this property. It is suggested by counsel that there is an error in the exceptions as to the time of the conversation sought to be proved, but we must take the exceptions as they are.

But supposing the facts sought to be proved by Hughes, transpired prior to the delivery of the notes to the defendant, still, we do not find anything in this case that would warrant the introduction of this testimony, as there is no evidence tending to show that the notes in question were delivered to the defendant, or his wife, as a compensation for any injury, supposed, or real, that had been done to her. It was claimed on the trial by the defendant's counsel, that such was the fact, but there is no evidence tending to prove it, or that the defendant had ever made any claim on the plaintiff of that character. In fact, all the evidence of the defendant on this point goes to show, that the notes were voluntarily given by the plaintiff to the defendant's wife. If this was so, the plaintiff clearly was not entitled to recover, whatever his motive may have been in giving them to her, and

so the court below told the jury. And upon the question whether the notes were given to the wife of the defendant or not, the facts sought to be proved by Hughes were clearly inadmissible, as having no tendency to establish that fact, but rather the contrary, as it is not very probable that the defendant would one day be telling these scandalous stories about the plaintiff's wife to him, and on another sitting down at the same table with them, in the most friendly manner (apparently), and delivering over to her this amount of property as a *gift*.

Again, it is insisted that admitting the facts to be as claimed by the plaintiff, the court erred in charging the jury that there had been such a compliance with the conditions, on which the plaintiff put the notes into the defendant's hands, as to terminate the defendant's right to retain them, and entitle the plaintiff to recover.

The plaintiff's testimony tended to show that the defendant was uneasy about the title to the land he bought of Prosser, there being mortgages upon it that had not been discharged upon the record, and for the purpose of quieting him, and to secure him against those mortgages, he gave the defendant a deed of the land and delivered over the notes in question, to be held until he should " get up the mortgages" and the mortgage notes. That at a subsequent time he did get the mortgage notes, and a quit claim deed from one of the mortgagees (the other mortgagee being dead); these notes he tendered to the defendant, and at the same time delivered to him his bond in the sum of two thousand dollars, to indemnify him against the mortgage that was not discharged on the record. This bond the defendant accepted. Assuming all this to have been done, we think it clear that the defendant would have no right longer to retain the notes in question. The object for which the notes were deposited was evidently as a security against the mortgages; when the mortgage notes were paid and taken up, all danger from this source was at an end, and full and ample evidence thereof was furnished; the means of a perfect defence against them was tendered him. These mortgages could not then be enforced either in law or in equity, and they were legally and equitably extinct, so far as any injury to the defendant was concerned, and this we think is all that it

can fairly be inferred from the exceptions, the parties contempla-
ted. There was no particular method agreed upon by which
the object was to be accomplished, as in the case of *Hoyt* v. *Swift*,
13 Vt. 129.

But even if it could be said that there was not a technical com-
pliance with the terms of the arrangement; still, when the defend-
ant accepted the plaintiff's bond, to indemnify him against the
Hutchinson mortgage, he thereby waived all claim to such tech-
nical compliance on the part of the plaintiff, and accepted the
bond in lieu thereof. That it was so offered and so accepted we
think is apparent from the exceptions. And the defendant
refused to deliver up the notes in question, not upon the ground
that the plaintiff had not complied with the terms of the agree-
ment, but solely on the ground that they had been *given* to the
wife of the defendant, and that she had the right to hold them,
independent of any question as to the mortgages. We think,
therefore, that there was no error in the charge of the court in
this respect.

But it is said the court erred in their charge to the jury as to
the rule of damages. The general rule seems to be well settled
that when trover is brought to recover for notes, or other *choses
in action*, executed by persons other than the defendant, but which
the defendant has in his possession, and wrongfully withholds
from the plaintiff, the rule of damages is the value of the prop-
erty. This, *prima facie*, is the amount due on the instrument,
but this may be rebutted by proof of its actual value.

But when the action is brought to recover for notes executed by
the defendant himself, and which he wrongfully withholds, the
rule of damages is the amount due thereon at the time of trial,
without reference to the ability of the defendant to pay. The
plaintiff, in such case, is entitled to a judgment for an amount
equal to the debt which he has against the defendant, and which
is discharged by such judgment.

As this action is brought to recover for notes executed by
Prosser, and not by the defendant, the first of these rules is appli-
cable here, unless the peculiar circumstances attending this case
are such as to take it out of such general rule.

It appears that the plaintiff bargained with Prosser for the sale

of a piece of land, and gave him a deed of it, to become good and valid on the payment of ten notes of sixty dollars each.  Seven of the notes now in controversy are a part of these ten notes.  Prosser sold the land to the defendant and gave him a quit claim deed of it, and the defendant, as a consideration therefor, agreed with the plaintiff and Prosser to pay the plaintiff what was then due on these notes ;  the defendant subsequently paid three of the ten notes before he became alarmed about the title, and prior to the transactions that resulted in the execution of the deed by the plaintiff to the defendant, and the delivery of these notes.

The transaction between the plaintiff and Prosser was in the nature of a mortgage, by which the payment of the ten notes was secured upon the land.  After Prosser deeded to the defendant, and the defendant had paid three of these notes, the plaintiff's lien still continuing, it would seem that the remaining seven notes in the plaintiff's hands must have been perfectly good, independent of the ability of Prosser to pay.   Under these circumstances the plaintiff gives the defendant a deed of the land, and delivers over the notes, thus relinquishing his lien on the land, and giving the defendant a perfect title to it.   Now if the object of the parties was, as claimed by the plaintiff, to indemnify the defendant against the mortgages, and the plaintiff had subsequently removed those incumbrances (as we find that he had), then it became the duty of the defendant to return the notes and give the plaintiff the same lien upon the land that he had relinquished; and if the title to the land had remained in the defendant, a court of equity would have compelled him to do it. But it appears that in December, 1856, and while the defendant was rightfully in possession of said notes and title, he sold this land to one Keyes, and for aught that appears, received the full value of it.   This he did with the knowledge, and without objection on the part of the plaintiff.

So that it seems in this view of the case, that the defendant has received the full value of the land sold by the plaintiff to Prosser, and for which the notes in question were given, which notes the defendant agreed to pay to the plaintiff as the consideration for the deed from Prosser to him.   Whether an action could be maintained against the defendant by the plaintiff, on this agree-

ment to pay these notes to him, is a question that is not now necessary to determine. If an action could be maintained to enforce that agreement, then clearly the rule of damages in this case should be the amount due on the notes. And we think it equally clear, under the peculiar circumstances of this case, that as the defendant, by refusing to deliver up these notes, has made himself liable to an action therefor, the rule of damages should be the amount due on the notes at the time of trial.

These are the only questions made in the argument, and as we find no error in the ruling of the court below in regard to them, the judgment of the county court is affirmed.