THOMAS F. ACKERMAN, Administrator *De Bonis Non* of Alfred W. Fleming's Estate v. GREEN, Appellant.

**Division Two, March 29, 1906.**

1. **FORM OF ACTION.** There is but one form of action in this State for the enforcement or protection of private rights or the redress or prevention of private wrongs, namely, a civil action. Our Code requires a plain and concise statement of the facts constituting the cause of action, and it is sufficient if the facts so stated authorize the judgment asked for or rendered.

2. ———: **Principal and Agent: Adjustment of Accounts: Conversion.** The administrator's petition stated that defendant for many years prior to the death of deceased was his confidential agent and as such received large sums of money belonging to deceased for investment, part of which he retained and used, giving to deceased therefor his notes, and that a short time before his death deceased owned certain notes given by defendant, specifically described and aggregating $182,700, besides interest, and that said notes were in defendant's hands at the time of the death of deceased, as was $7,067.73 in money belonging to deceased, all of which were left in defendant's possession to be exchanged for and used in the purchase of other property, and that plaintiff, after decedent's death, demanded them, but defendant refused to deliver the same, on the ground that he held them to be used in buying stock in a railroad company to be reorganized, which could not now be reorganized, and demanded judgment for the amount of the notes and money. *Held,* that this petition did not state an action for the conversion of the notes and money, but by it plaintiff simply sought to adjust and settle the account between decedent and defendant for the notes and money placed in defendant's hands during the existence of the agency.

3. ———: ———: **Conversion: Insolvency: Nominal Damages.** Even if said action was one for conversion of funds belonging to his principal, defendant had no right to show, by way of defense, that he was insolvent, and that the notes were value-

Ackerman v. Green.

less and that plaintiff was entitled to only nominal damages, for defendant was the maker of the notes. The maker of a note cannot obtain it, destroy it or convert it to his own use, and then set up his own insolvency in mitigation or reduction of the damages sought to be recovered. [Disapproving the *obiter dictum* in Fry v. Baxter, 10 Mo. 192.]

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) This is a suit for conversion. Summer v. Rogers, 90 Mo. 324; O'Donoghue v. Corby, 22 Mo. 396; 4 Ency. Pl. and Pr., 915, par. 2; 21 Ency. Pl. and Pr., 1089; Wilkinson v. Mosely, 18 Ala. 288. (2) Conversion will not lie to recover a balance on open account. Petit v. Boju, 1 Mo. 64; 21 Ency. Pl. and Pr., 1021. (3) In a suit for conversion of a promissory note against the maker the recovery is confined to the actual value of the note; in determining which actual value the insolvency of the maker has to be considered and if he be insolvent and the note is not secured or the obligation of some other person who is solvent, but nominal damages can be awarded for its conversion. Fry v. Baxter, 10 Mo. 302; Menkens v. Menkens, 23 Mo. 253; O'Donoghue v. Corby, 22 Mo. 396; Claues v. Hawley, 12 Johns. 484; Kalckhoff v. Zochelant, 40 Wis. 427. (4) Conversion is the remedy where promissory notes are illegally withheld from the owner. Seehorn v. Bank, 148 Mo. 255; Harlan v. Brown, 4 Ind. App. 319; Clowes v. Hawley, 12 Johns. 484. (5) Conversion is the remedy where the notes are unpaid and in the hands of the maker. Tucker v. Jewett, 32 Conn. 563. (6) The referee should not have excluded evidence after the close of the case. Moreton v. McDermott, 10 Mo. 605; Lawrence v. Shreve, 26 Mo. 492. (7) The evidence in this

case does not show that Green had in his possession any of the notes plaintiff described in the petition.

*Daniel Dillon* and *Robert L. Shackelford* for respondent.

The petition is not one for trover and conversion, and appellant is in error in his construction of it. But even if this action be regarded as one for conversion the judgment should not be disturbed. In an action against the maker for conversion of his own note he is not permitted to show his own insolvency in diminution of damages. Stephenson v. Thayer, 63 Me. 143; Robbins v. Packard, 31 Vt. 570; Outhouse v. Outhouse, 13 Hun 130; 1 Sedgwick on Dam. (8 Ed.), sec. 256; 3 Sutherland (2 Ed.), sec. 1132; 2 Daniels on Neg. Inst. (4 Ed.), sec. 1468; 26 Am. and Eng. Ency. of Law, 846. A judgment in an action for conversion, and satisfaction of such judgment, operate to transfer to the defendant in the action the title to the property converted. Mitchell v. Shaw, 53 Mo. App. 654; 2 Edwards, Bills and Notes (3 Ed.), 679; 2 Parsons, Notes and Bills, 435; Kalckhoff v. Zerland, 40 Wis. 427. The first count of this petition is not an action for trover and conversion. Under the common law system of pleading this petition would be lacking in technical phraseology, but it complies with the requirements of our Code, as it sets out a plain and concise statement of the facts constituting plaintiff's cause of action. Globe L. and H. Co. v. Doud, 47 Mo. App. 451. Under our Code, pleadings are to be liberally construed, with a view to substantial justice between the parties. Sec. 629, R. S. 1899. And after verdict plaintiff is entitled to benefit of every reasonable inference that may be drawn from the facts alleged. If the petition was in any respects vague or uncertain, it was the duty of defendant to have had it corrected by timely motion; otherwise, it must now be held good, as against any objection of that order, providing

it states a substantial cause of action. Davis v. Rail-road, 126 Mo. 78; Foster v. Railroad, 115 Mo. 177; Still-well v. Hamm, 97 Mo. 586; Padley v. Catterlin, 64 Mo. 638. The giving of the notes was not payment of the original indebtedness, or any part of it. There is no question that the law in this State is that the giving of the note of the debtor is not payment unless expressly agreed to be such. Howard v. Jones, 33 Mo. 583; Black v. Dorman, Admr., 51 Mo. 31; Wiles v. Robinson, 80 Mo. 52; Leabo v. Goode, 67 Mo. 126; State ex rel. v. Wagers, 47 Mo. App. 438; Shotwell v. Monroe, 42 Mo. App. 677; Howard v. Shirley, 75 Mo. App. 150; Bertiaux v. Dillon, 20 Mo. App. 603; Young v. Powell, 87 Mo. 128; Clark v. Clark, 86 Mo. 124; Johnson-Brinkman Co. v. Bank, 116 Mo. 567.

FOX, J.—This cause is now pending in this court upon appeal by the defendant from a judgment in the circuit court of the city of St. Louis. The petition upon which this action is predicated consists of two counts. As the judgment from which the appeal was taken was rendered upon the first count it is only necessary to reproduce the first count of the petition, which was as follows:

"Plaintiff states that Alfred W. Fleming died intestate in St. Louis county, Missouri, in January, 1898, and that plaintiff was thereafter, viz., on the 24th day of January, 1898, appointed by the probate court of said St. Louis county, administratrix of the estate of said Alfred W. Fleming, and she duly qualified as said administratrix. Plaintiff further states that defendant for many years previous to the death of said Alfred W. Fleming, viz., from the year 1886, acted as the confidential agent of said Fleming and as such agent received large sums of money belonging to said Fleming, part of which she loaned for said Fleming and a large part of which he retained and used, giving therefor to said Fleming the

notes of defendant, part of which were signed in the name of Charles Green and part of which were signed in the name of Green & LaMotte, a name in which defendant carried on and conducted the business of a real estate and financial agent.

"And plaintiff further says that a short time before the death of said Fleming, viz., in the year 1898, said Fleming owned and held the following notes, delivered to him by defendant, for money of said Fleming received and retained by defendant, viz., a note made by defendant in the name of Green & LaMotte, dated September 4, 1891, and payable six years after date, for sixty thousand dollars with interest at the rate of six per cent per annum, on which defendant paid the interest to March 4, 1897. And another note made by defendant in the name of Green & LaMotte, dated August 15, 1892, payable five years after date, for ten thousand dollars, with interest at rate of six per cent per annum, on which interest has been paid by defendant to August 15, 1897. And another note made by defendant in the name of Green & LaMotte, dated June 4, 1896, payable three years after date, for one hundred and ten thousand dollars with interest from maturity at rate of six per cent per annum, and also six interest notes for the interest for three years on said note for $110,000, each for twenty-seven hundred and fifty dollars, dated June 4, 1896, and payable respectively in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date. And at the same time that said Fleming owned and held said notes as aforesaid, he owned and had in the hands of defendant as his said agent the sum of $7,067.73, and he at the same time also held 2,069 shares of the stock of the People's Railway Company of the value of $20,690. All of said notes, stock and cash were left in the possession and control of said Green by said Fleming as his agent to be exchanged for or used in the purchase of other property. Plaintiff demanded of defendant, on February 1, 1898,

that he deliver to her said notes, stock and cash, or account to her for same, and he refused to deliver the same to plaintiff or to account to her for them or any of them, except to say that said Fleming delivered them to him to be paid out and delivered for $200,000 of stock in a company to be formed for the reorganization of the People's Railway Company and the Fourth Street and Arsenal railway when that shall have been formed.

"And plaintiff says that no company has ever been formed, nor any reorganization of said railway companies, and none ever can be, for the reason that all the property and franchises of both said companies have been sold under mortgages made long before the year 1897, and have been bought by third parties having no connection with said Green or said Fleming.

"Wherefore plaintiff asks judgment against defendant for two hundred and fifty thousand dollars and interest and costs."

The answer to this petition is a general denial.

On May 6, 1900, at the April term, 1900, of said St. Louis Circuit Court, this case was referred to Frank K. Ryan, Esquire, to try all the issues. The referee heard all the testimony adduced by the parties to this action and at the June term, 1902, of said court he filed his report, which was as follows:

*"To the Honorable Circuit Court of the City of St.
     Louis:*

"I, the undersigned, Frank K. Ryan, referee to hear and determine all the issues involved in the above-entitled cause by virtue of the order of this court of date May 7, 1901, having first taken and subscribed to the oath required by law, in the manner and form shown by the certificate thereof which is herewith returned, and having then tried the said issues under the notice, at the times and places that are set forth in the transcript certified by me of the record of the proceedings

195 Sup.—9

at said hearing which accompanies this report and which is made a part hereof, do now after necessary references to the pleadings herein and to the material portions of such record indicating questions of fact and law, state my conclusions on the entire case thus presented.

"To do so and to fully comply with defendant's request that the referee herein make a separate finding as to each issue of law and fact arising under this reference, it is in order at the outset to state the issues that appear from the pleadings of the (II) parties hereto. It thus is found, the defendant's answer being a general denial, that the present plaintiff Thomas F. Ackerman, administrator *de bonis non* of the estate of Alfred W. Fleming, by adopting the petition of the original plaintiff, undertook to prove under the first count of said petition the allegations that Alfred W. Fleming died intestate in St. Louis county, Missouri, in January, 1898; that Mary C. Fleming (original plaintiff herein) was thereafter on the 24th day of January, 1898, appointed by the probate court of said St. Louis county administratrix of the estate of said Alfred W. Fleming, and that she duly qualified as such administratrix; that the defendant for many years previous to the death of said Alfred W. Fleming, viz., from the year 1886, acted as the confidential agent of said Fleming, and as such received large sums of money belonging to said Fleming, part of which he loaned for said Fleming, and a large part of which he retained and used, giving therefor to said Fleming his, said defendant's, notes, some of which were signed in the name of Charles Green and the others in the name of Green & LaMotte, a name used by defendant in conducting the business of a real estate and financial agent; that a short time before the death of said Fleming, viz., in the year 1898, said Fleming owned and held the following notes, delivered to him by the defendant for money of said Fleming received and retained by the defendant,

viz.: (1) note made by defendant in the name of Green
& LaMotte, dated September 4, 1891, for sixty thou-
sand dollars, with interest at the rate of six per cent
per annum, and on which defendant paid the interest
to March 4, 1897; (2) note made by defendant in the
name of Green & LaMotte, dated August 15, 1892, pay-
able five years after date, for ten thousand dollars, with
interest at the rate of six (III) per cent per annum,
on which interest has been paid by defendant to August
15, 1897; (3) note made by defendant in the name of
Green & LaMotte, dated June 4, 1896, payable three
years after date, for one hundred and ten thousand
dollars, with interest from maturity at the rate of six
per cent per annum; and (4) six interest notes to cover
the interest for three years on said note for one hun-
dred and ten thousand dollars, each for twenty-seven
hundred and fifty dollars, dated June 4, 1896, and pay-
able respectively in six, twelve, eighteen, twenty-four,
thirty and thirty-six months after date; that at the same
time the said Fleming owned said notes as afore-
said, he owned and had in the hands of de-
fendant as his said agent the sum of $7,067.73; and
the likewise said Fleming at such time also held
2,069 shares of the stock of the People's Rail-
way Company of the value of $20,690; that all
of said notes, cash and stock were left in the possession
and control of said Green by said Fleming as his agent
to be exchanged for or used in the purchase of other
property; that plaintiff demanded of defendant on Feb-
ruary 1, 1898, that he deliver to her (said original
plaintiff) said notes, cash and stock, or account to her
for same, and that he refused to deliver same to her,
or account to her for them or any of them, except to
say that Fleming delivered them to him to be paid out
and delivered for $200,000 stock in a company to be
formed for the reorganization of the People's Railway
and the Fourth Street and Arsenal Company when that
shall have been effected; also plaintiff further alleged

in court, that no company has ever been formed for the reorganization of said railway companies, and that none ever can be, for the reason that all the property and franchises of both said companies have been sold under mortgages made long before the year 1897, and have been bought by third parties having no connection with said Green; and the plaintiff in said first count asks judgment against defendant for two hundred and fifty thousand dollars with interest and costs.

"And it remains to be said further in regard to such issues that by a second count of said petition the plaintiff herein also undertakes to show, first, liabilities of the defendant under allegations which restate all those of said first count, except that in said second count the agency of defendant is made to commence in 1885, instead of from 1886, as averred in said first count; and second, further liabilities under allegations with reference to additional notes and other property, as follows:   Note for $20,000; note for $39,000; ten bonds for one thousand dollars each of the Fourth Street and Arsenal Railway Company; note secured by deed of trust for $25,000, on which $9,000 has been paid, leaving a balance due thereon of $16,000 with interest thereon unpaid; and $20,000 in cash; for all of which plaintiff in said second count asks judgment against defendant for the sum of three hundred and fifty thousand dollars and costs.

"But of the issues arising from and because of the foregoing allegations and the denial thereof by defendant there can be no serious contest under the evidence except in regard to the nine notes and the $7,067.73 cash mentioned in the first count of plaintiff's petition, so that the question of plaintiff's right to recover in this cause is confined to said first count and to these items thereunder.   For the allegations leading up to and subsequent to and having a bearing on the allegations containing these items, not including among such preliminary or subsequent allegations the allegation

covering 2,069 shares of stock of the People's Railway Company, seem to be admitted by the defendant; and certainly they have been proven and, therefore, we so hold and consequently find in favor of plaintiff on said issues proven as aforesaid. But as to the said remaining item, of said first count, viz., said 2,069 shares of stock, of the par value of $20,690, there is no proof that they are or were, during the time covered by this action, of any value whatever; but it is evident from the testimony that such stock was during said period worthless. Such being the case, the defendant cannot be called to account as to that for which it does not appear that he received any value, or for that which could not be of any value to him according to the evidence. So as to said shares of stock we find in favor of the defendant.

"The other reasons for confining the question of recovery here to said items of notes and cash as they are declared on in said first count are because they are also declared on in the second count of the petition in substantially the same form as in said first count, and, of course, there could not be two recoveries on said items, and because the remaining allegations of said second count have not been established by testimony. There was no proof at all about the $25,000 note of said count, and the evidence to the further items of said second count, the note for $20,000, the note for $39,000, and the ten bonds for $1,000 each of the Fourth Street and Arsenal Railway Company, fails to make a prima-facie case against the defendant. Therefore, for the reasons aforesaid, I find in favor of the defendant as to said last four items, and my findings on the whole of said second count will appear at the end of this report.

"In view of our conclusions as aforesaid we have now only to consider said items of notes and cash of said second count. On them the issues are both of law and of fact. As to the facts, the testimony shows clearly that for cash received from Alfred W. Fleming

or for interest due him the defendant got full value for the said notes; that they were left in the possession of the defendant as the confidential agent of the plaintiff; that the case is for a balance due on open account according to defendant's books; and that the administratrix of said Fleming demanded said property from the defendant or that he account to her for same. Now we are not aware that the defendant disputes any of these statements. In fact he seems to have admitted all of them. But defendant seeks to avoid any liability for the above facts on the ground that such notes and cash were surrendered to Green & LaMotte by A. W. Fleming in consideration of their agreement to deliver to said A. W. Fleming $200,000 of stock in the company to be formed on the reorganization of the People's Railway Company and the Fourth Street and Arsenal Railway Company when that shall be effected. He also seeks to avoid any liability on said notes because of his alleged insolvency; contending that this is an action for conversion, and consequently that there can be no judgment against him for converting worthless things. Defendant's further defense as to the cash is that a balance due on a running account cannot be recovered in an action for conversion. With reference to the first of these defenses it appears that the alleged agreement is entirely oral, and that there was neither subscription for stock nor writing of any kind to evidence same. Furthermore it was conclusively shown that no such agreement could be carried out by the defendant; however, this defense has not been pressed by defendant's learned counsel. But they do seriously maintain that the said second defense is sufficient, and that, for the reasons above stated, there can be no recovery on the notes in this form of action, which they assume is one for the conversion of personal property. But certainly the first count of the plaintiff's petition which covers the items now being considered does not purport to state such an action. But it does state fully

the business relations between said Fleming and the defendant and gives in detail the transaction had between them and on the facts stated recovery is asked. It is true that in the second count of the petition a refusal to deliver on demand is made a special ground for recovery, but it is not so in the first count. Still, it appearing that these notes but represent cash obtained from or interest due Alfred W. Fleming, defendant should not be heard in any form of action to say that his notes given therefor are of no value. It follows from this conclusion that the evidence offered to show the insolvency of the defendant and which was received subject to the plaintiff's objections, must be and is stricken from the record of testimony herein. Holding that the plaintiff's action is not one for conversion, we cannot sustain defendant's said third defense that there can be no recovery as to said item of $7,067.73 cash in this form of action, and on the grounds stated our finding on the said three defenses is in favor of the plaintiff.

"There will be findings, then, on said nine notes and on said cash, as follows: (1) On the said note for $60,000, dated September 4, 1891, with interest on the same at six per cent per annum from March 4, 1897, computed to January 4, 1902, a total of principal and interest of $77,400; (2) on said note for $10,000, dated August 15, 1892, with interest on the same at six per cent per annum from August 15, 1897, computed to January 4, 1902, a total of principal and interest of $12,633.33; (3) on said note for $110,000, dated June 4, 1896, with interest on the same at six per cent per annum from June 4, 1899, computed to January 4, 1902, a total of principal and interest of $126,994.81; (4) on said interest note of $2,750 dated June 4, 1896, payable six months after date, with interest thereon at six per cent per annum from maturity computed to January 4, 1902, a total of principal and interest of $3,588.75; (5) on said

interest note for $2,750, dated June 4, 1896, payable twelve months after date with interest at six per cent per annum from maturity, computed to January 4, 1902, a total principal and interest of $3,506.25; (6) on said interest note for $2,750 dated June 4, 1896, payable eighteen months after said date, with interest at six per cent per annum from maturity, computed to January 4, 1902, a total of principal and interest of $3,-423.75; (7) on said interest note for $2,750 dated June 4, 1896, payable twenty-four months after date, with interest from maturity at six per cent per annum, computed to January 4, 1902, a total of principal and interest of $3,341.25; (8) on said interest note for $2,750 dated June 4, 1896, payable thirty months after date, with interest from maturity at six per cent per annum, computed to January 4, 1902, a total of principal and interest of $3,328.75; (9) on said interest note for $2,750 dated June 4, 1896, payable thirty-six months after date, with interest from maturity at six per cent per annum, computed to January 4, 1902, a total of principal and interest of $3,176.25. And on said cash item of $7,067.73, with interest at six per cent per annum from the filing of this suit, August 3, 1899, computed to January 4, 1902, a total of principal and interest of $8,092.50. All of said items being in the said first count of plaintiff's petition, and aggregating the sum of $245,415.64. (6) I, therefore, recommend that the plaintiff have judgment on said first count of his petition in the sum of $245,415.64, with interest at six per cent per annum from January 4, 1902.

"Inasmuch as I have found for defendant on all the issues contained in the second count of the plaintiff's petition that are not contained in and on which findings have been rendered in the first count thereof, I recommend that defendant have judgment on said second count.

"All of which is respectfully submitted,

"FRANK K. RYAN, Referee."

Alfred W. Fleming was a man of large wealth, who resided in St. Louis county, Missouri, for many years previous to his death, which occurred in January, 1898. The defendant had been the business agent of Mr. Fleming for many years, and as such agent had received large sums belonging to Mr. Fleming. Some of this money he loaned out and invested and some of it he paid out for and on account of Mr. Fleming, and some of it he paid back to Mr. Fleming, and a very large part of it he retained, giving his notes therefor to Mr. Fleming. He rendered statements from time to time to Mr. Fleming of the amount of money he had received and paid out, and the amounts for which he had given notes appeared in those statements. After the death of Mr. Fleming, his widow, Mary C. Fleming, was appointed administratrix of his estate; and she, as such administratrix, commenced this suit against the defendant in the circuit court of the city of St. Louis, on the 1st day of August, 1899. Subsequent to the commencement of this suit by Mary C. Fleming, administratrix of the estate of Alfred W. Fleming, she died, and the present administrator took charge of said estate and the cause of action was revived in his name.

We deem it unnecessary to give a detailed statement of the evidence before the referee upon which his findings as contained in the report were based. It will suffice to say that the testimony introduced by the plaintiff before the referee was ample to support the findings as made in the report.

Mathew W. Quann, father of Mrs. Fleming, testified, clearly, consistently and positively, to conversations had with the defendant, Mr. Green, and that Mr. Green had said that he would have a statement prepared as to the business transactions between him and Mr. Fleming, and give it to him; and he also testified that he got this statement and that on the day he received it he met Mr. Green who stated to him that the statement was ready for him and to call at the office

and get it, and thereafter on that day he called at Mr. Green's office and Mr. Kearney handed him an envelope sealed up which contained the paper which is marked "Exhibit No. 1" in the abstract. On the trial, this statement was produced and introduced in evidence, which was as follows:

"The following notes and stock was surrendered to Green & LaMotte by A. W. Fleming in consideration of their agreement to deliver to said A. W. Fleming $200,000 of stock in the company to be formed on the reorganization of the People's Railway Company and the Fourth Street and Arsenal Railway Company when that shall be effected:

"State of notes and stock surrendered on the above mentioned agreement:

"Note of Green & LaMotte, dated September 4, 1891, for ..........$ 60,000.00
Note of Green & LaMotte, dated August 15, 1892, for ...............   10,000.00
Note of Green & LaMotte, dated June 4, 1896, for ..................  110,000.00
Six interest notes, Green & LaMotte, dated June 4, 1896, each for...    2,750.00
Statement from ledger to February 5, 1898, balance ...... ........    7,067.73
2069 shares of stock of the People's Railway Company."

The statement of witness Quann was corroborated to some extent by Mr. Kearney, bookkeeper for Mr. Green, who testified that after the death of Mr. Fleming he gave Mr. Quann an envelope which Mr. Green had given him with direction to give it to Mr. Quann when he came in; that the envelope was sealed and that he did not know what was in it.

As to the proof in regard to the note of $110,000, about which appellant raises some question, we will state that we have carefully read the disclosures of

the record in detail, and find that the proof upon that question fully supports the finding of the referee. The statement as heretofore mentioned, which was given the witness Quann upon the directions of Mr. Green, is corroborated from the book account kept by the defendant, and which was read in evidence from ledger "N." Mr. Lightholder, who was a bookkeeper for the defendant, also corroborates the correctness of the statements as given to witness Quann.

It is also unnecessary to set out in detail the testimony offered by the defendant in order to enable us to determine the legal propositions involved in this controversy. It is sufficient to say that the testimony offered by defendant tended to contradict many of the material matters offered in evidence by the plaintiff, and to show a different state of facts.

Upon the filing of the report learned counsel for appellant duly filed his exceptions to the same, which exceptions were fully heard by the trial court and overruled, and the report of the referee approved and judgment rendered upon the first count in the petition in accordance with the findings and recommendations of the referee.

Timely motions for new trial and in arrest of judgment were filed and by the court overruled. From this judgment defendant in due time and proper form prosecuted his appeal to this court, and the record is now before us for consideration.

## OPINION.

It is manifest from the disclosures of the record in this cause, and it is practically conceded in the brief of learned counsel, that the main questions involved are in respect to the form of the action, and the action of the referee in excluding the evidence offered by appellant as to his insolvency.

1. It is earnestly contended by appellant that the

first count of the petition upon which the judgment was rendered in this cause is simply an action for the conversion of the notes and other securities mentioned in the petition.

2. Assuming the correctness of the first contention, it is urged that the action of the referee in excluding the testimony tending to show that defendant, who was the maker of the notes, was insolvent, was error, for which the judgment in this cause should be reversed and the cause remanded. In other words, it is insisted by appellant that he had the right to show, upon the question of the measure of damages, in this form of action, that, notwithstanding he was the maker of the notes, he was in fact insolvent, and that the notes were valueless and that plaintiff was only entitled to recover nominal damages.

We are unable to agree with learned counsel for appellant upon either of the contentions as above indicated. In the first place, this is not an action for conversion, and, secondly, if it was, defendant being the maker of the notes, cannot set up or show his own insolvency in mitigation of damages.

It is unnecessary to discuss the form of this action or its name. The statute of this State by express provision has named all proceedings in the courts of this State for the enforcement or protection of private rights and redress or prevention of private wrongs. Section 539, Revised Statutes 1899, provides: "There shall be in this State but one form of action for the enforcement or protection of private rights, and redress or prevention of private wrongs, which shall be denominated a civil action; and the party thereto complaining shall be known as the plaintiff, and the adverse party as the defendant." We have also provided by the Code a guide in the construction of pleadings. Section 629, Revised Statutes 1899, provides that "in the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally con-

strued, with a view to substantial justice between the parties."

We must approach the consideration of the petition in this cause with the full recognition of the changes wrought in respect to the construction of pleadings by the enactment of the Code, and pleadings must be construed in the light of the intention and spirit of the provision of the statute as herein indicated. We have in this case, in the first count of the petition, a statement of a cause of action growing out of many years of business transactions between Alfred W. Fleming and the defendant, who during that period was the confidential agent of said Fleming, and this action is nothing more nor less than one to adjust and settle such business transactions. In other words, by this action it is simply sought to recover an indebtedness for large sums of money which had been placed in the hands of the defendant during the existence of the agency between Fleming and the defendant. The petition alleges that the defendant received large sums of money belonging to Fleming, part of which he loaned for said Fleming and a large part of which he retained and used, giving therefor to said Fleming the notes of defendant, part of which were signed in the name of Charles Green and part of which were signed in the name of Green & LaMotte, a name in which defendant carried on and conducted the business of a real estate and financial agency. Then follows a designation of the notes executed by the defendant, together with the interest promised to be paid. This petition in a plain and concise manner states the relation existing between the parties, as well as all the facts which indisputably show that defendant is indebted to plaintiff for money which belonged to Fleming and which came into the hands of defendant and has not been paid over to Mr. Fleming or his legal representatives. The statement of the facts setting out the cause of action in the first count of this petition plainly demonstrates that plaintiff is seeking

to have defendant account to the legal representative of the deceased Fleming for money due said Fleming. The amount of the indebtedness is clearly stated and the prayer of the petition is for a judgment for that amount.

This petition seeks to make known to the court the history of the business transactions between Alfred W. Fleming and the defendant, and fully sets forth the indebtedness and how it is evidenced, and asks for judgment for the amount of such indebtedness, and we are unwilling to say that because of the mere designation of the notes executed by the defendant which he refused to turn over to the legal representatives of Alfred Fleming, this action should be named one for conversion of such notes. The clear intent of the pleader is demonstrated by the pleading itself that it simply seeks to adjust business transactions of many years standing between principal and agent and recover the amount of money which had during the many years of their business relations been placed in the hands of the agent for investment or a loan.

It was ruled by this court in Stillwell v. Hamm, 97 Mo. l. c. 586, that "a pleading should not now be construed most strongly against the pleader. Its language should be taken in its plain and ordinary meaning, and such interpretation given it as fairly appears to have been intended by its author."

In Clark v. Clark, 86 Mo. l. c. 124, it was ruled that we have under our system but one form of civil action, and all that is required to enforce a demand is that the petition should set out the facts, whether the same were such as would entitle the claimant to legal or equitable relief. To the same effect is Johnson-Brinkman Co. v. Central Bank, 116 Mo. l. c. 567-568.

The rule as applicable to pleading under the Code is nowhere more clearly announced than in Globe L. and H. Co. v. Doud, 47 Mo. App. l. c. 451. In discussing the question of pleading, it was said: "Now when it is remembered that in the word and spirit of our Code,

we have nothing to do with these old forms of procedure; that we have 'but one form of action for the enforcement or protection of private rights, etc., which shall be denominated a civil action;' and that our pleadings (whether petition or answer), shall be sufficient if they state in a plain and concise manner the facts constituting the cause of action or defense, etc., we find ourselves relieved of any needed discussion of these intricacies in pleading which served more as pitfalls than as aids to a just administration of the law. It is enough, under our system, that such facts appear as justify a judgment the one way or the other. We have no concern as to the mere form of pleading.'' To the same effect is Padley v. Catterlin, 64 Mo. App. l. c. 638. The court in that case, in discussing the provisions of the statute applicable to pleading under the Code, said: ''We are commanded by the statute to distinguish between form and substance; to disregard any defect in the pleadings which shall not affect the substantial rights of the adverse party, and in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties. It has been ruled that it is necessary to give effect to these statutory provisions, that a pleading must be construed to mean what fairly appears to have been intended by the pleader''—citing Stillwell v. Hamm, 97 Mo. 579. [National Bank of Commerce v. Pennington, 42 Mo. App. 355.]

While it may be said that the first count of this petition might have been made more definite and certain, yet defendant took no steps in that direction, simply filed a general denial, and it must be held that this petition after judgment is sufficient.

This leads us to the consideration of appellant's second contention that the referee erroneously excluded the testimony offered by appellant as to his insolv-

ency. As before stated, this contention is urged upon the assumption that this is an action for conversion. We have herein given expression to our views upon that question. This is not an action for conversion, but even though it was, the action of the referee was proper.

It must be remembered that the defendant was the maker of the notes designated in the petition, and the contention is that he had the right to show that the notes were worthless and thereby prevent a recovery, except for nominal damages. This court is unwilling to sanction such a doctrine. The Supreme Court of New York, in Outhouse v. Outhouse, 13 Hun 132, thus states the law upon this subject. It is there said that "it is true that the general law in an action for the conversion of a note of a third party is, that the damages are to be measured by the amount apparently due upon the note, but it may be shown that by reason of part payment, or the insolvency of the party obligated to pay the note, or by reason of the existence of some legal defense to the note, the plaintiff has not, in fact, sustained damages to the extent of the face of the note by reason of its conversion. [Booth v. Powers, 56 N. Y. 22.] It is, however, held that where the maker of the note has converted it, in an action brought against him for such conversion, he cannot set up his own insolvency by way of mitigating the damages."

The law upon the subject now under discussion is nowhere more clearly or correctly stated than in Stephenson v. Thayer, 63 Maine 143. It was insisted in that case, as it is in the case at bar, that the defendant's insolvency was a matter for the consideration of the court or jury in estimating the damages to be assessed, and an instruction was requested on the part of the defendant embracing that theory of the law. The request was denied and the court in discussing the action of the lower court in denying such request thus forcibly and clearly stated the law upon that subject: "A debtor cannot, after wrongfully depriving his creditors of the

evidence of his indebtedness, mitigate the damages to be recovered against him for this act by setting up his own worthlessness. The sum which the defendant himself realizes by the act of conversion must surely be the lowest measure of damages. If a man takes up his own paper in that manner, the amount which he would have been legally bound to pay to retire it regularly, is surely the amount which he has realized by its conversion. The remark made by the presiding judge in refusing the request was doubtless correct; and the distinction thereby recognized between the position of a man who wrongfully converts securities upon which he is himself liable, and him who converts securities outstanding against third parties (which may be of more or less value according to the ability of those parties to pay) is just and sound. Nor is there anything in the authorities cited by defendant's counsel to militate against the rule laid down in the charge. Mathew v. Sherwell, 2 Taunt. 439, was a suit brought by the assignee of a bankrupt against one who had received the bankrupt's check after the act of bankruptcy, and the sole ground upon which the plaintiffs could be supposed to have any claim at all was that the check was invalid. The plaintiffs then mistook their remedy in claiming damages for the conversion of a piece of paper which they themselves contended had no legal force or efficacy. In O'Donoghue v. Corby, 22 Mo. 393, the plaintiff sued an officer of a corporation in trover for withholding an account which bore a certificate of approval by an auditing committee. The defendant answered that the account contained false charges and was allowed by the auditing committee under a mistake of facts which were well known to the plaintiff, and that payment of the account had been withheld by the direction of the president of the company. The court held that the amount apparently due was prima facie the amount of damages for the con-

version, but that it was competent for defendant to show in reduction of damages—not that the company was unable to pay—but that the document was of less value than it purported to be or even that it was of no greater value than the paper it was written upon by showing payments, or the facts set up in the answer or any facts impeaching the validity of the instrument. The case does not sustain the position taken by the defendant here. He had the benefit of all that went to show that less was due upon the notes than appeared by their tenor. More than this he could not rightfully claim.''

To the same effect is Robbins v. Packard, 31 Vt. 570. There it was said that ''the general rule seems to be well settled that when trover is brought to recover for notes, or other choses in action, executed by persons other than the defendant, but which the defendant had in his possession, and wrongfully withholds from the plaintiff, the rule of damages is the value of the property. This, prima facie, is the amount due on the instrument, but this may be rebutted by proof of its actual value. But when the action is brought to recover for notes executed by the defendant himself, and which he wrongfully withholds, the rule of damages is the amount due thereon at the time of trial, without reference to the ability of the defendant to pay. The plaintiff, in such case, is entitled to a judgment for an amount equal to the debt which he has against the defendant, and which is discharged by such judgment.'' [1 Sedgwick on Damages, sec. 256.]

The general rule as to the measure of damages in action for the conversion of choses in action is stated as in the Maine and New York cases, and the learned author, in line with all the well-considered cases, notes the exception to the general rule when the action is against the maker, and after announcing the general rule, thus announces the exception: ''But the maker himself cannot give evidence of his pecuniary circum-

stances to reduce the damages.'' Mr. Daniels on Negotiable Instruments, sec. 1468a, substantially announces the same rule.

The rules of law as announced in the cases herein indicated, as to the measure of damages in actions against the maker for the destruction or conversion of choses in action executed by himself, are sound and logical, as well as being in harmony with the plain common principles of fair dealing between man and man. To hold that the maker of an instrument can obtain it, destroy it or convert it to his own use and then in a proceeding for the recovery of damages for such wrongful act to say that he can set up his own insolvency in mitigation or reduction of the damages sought to be recovered, to the judicial mind seems to be a monstrous doctrine, and we are unwilling to give our sanction to it.

In support of the contention of appellant upon this proposition we are cited to the cases of Fry v. Baxter, 10 Mo. 302; O'Donoghue v. Corby, 22 Mo. 393; and Menkens v. Menkens, 23 Mo. 252.

While the case of Fry v. Baxter, supra, was an action for trover against the maker of the note, a careful analysis of the opinion of the learned judge in that case will demonstrate that the question as to whether or not the maker could reduce the damages by reason of his own insolvency was not involved in that case, nor was it discussed, and Judge NAPTON simply announced the general rule as applicable to actions of that character, without noting the exceptions to such general rule which has been approved by the text-writers and the well-considered adjudicated cases upon this subject; hence that case cannot be considered as authority supporting the contention of the appellant. The case of O'Donoghue v. Corby, supra, is clearly distinguished in the case of Stephenson v. Thayer, supra, as herein indicated. Neither does the case of Menkens v. Menkens, supra, support the contention so ably presented by counsel for appellant. The plaintiff in that

case had delivered the note to defendants for collection and they were far removed from being makers, and the question involved in the proposition now being discussed was not before the court in that case, nor was it in any manner referred to; hence it furnishes no support to the insistence of the appellant upon the proposition now before us.

We deem it unnecessary to pursue this subject further. Our attention has been called to no case in this State where it has been held that the maker of a note can obtain it, convert it to his own use or destroy it, and then in an action against him set up his own insolvency in mitigation of the damages sought to be recovered for the wrong done, and if the cases to which our attention has been called are to be construed as announcing that rule of law, speaking for myself, I am unwilling to follow them. However, we are firmly convinced that the learned judges announcing the opinions in those cases never intended to announce such a rule.

We have thus given expression to our views upon the legal propositions involved in the record before us. We have carefully read in detail the testimony upon which the report of the referee is predicated, and are of the opinion that the judgment in this cause was manifestly for the right party and should be affirmed, and it is so ordered.

All concur.